UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THEODORE M. KEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-19-424-BMJ |
| ) | |
| EXXON MOBIL CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

At issue before the Court is Defendants' Motion to Dismiss and Brief in Support (Defs.' Motion) [Doc. No. 23]. Plaintiffs have responded (Pls.' Response) [Doc. No. 28], and Defendants have replied (Defs.' Reply) [Doc. No. 37].[1]

**I.   Background**

A summary of the facts as set forth in the First Amended Compl. (First Am. Compl.) [Doc. No. 18] is as follows. Plaintiffs bring suit against Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and XTO Energy, Inc. for underpayment or non-payment of royalties. Exxon Mobil Corporation is the parent of wholly owned subsidiary ExxonMobil Oil Corporation, which is the parent of wholly owned subsidiary XTO Energy, Inc. As such, both ExxonMobil Oil Corporation and XTO Energy, Inc. are wholly owned subsidiaries of Exxon Mobil Corporation. Plaintiff Thomas E. Wheeler owns royalty interests pursuant to an oil and gas lease in the Perry Rowe Unit 2 located in Latimer County, Oklahoma, which XTO Energy, Inc. currently operates (the Wheeler Lease). Plaintiff Theodore M. Key also owns royalty interests pursuant to an oil and gas lease in the Perry Rowe Unit 2 located in Latimer County, Oklahoma,

---

[1] All page citations refer to the Court's CM/ECF pagination.

which XTO Energy, Inc. currently operates (the Key Lease). Plaintiff Fitzgerald Farms, LLC owns royalty interests pursuant to an oil and gas lease located in Texas County, Oklahoma, which XTO Energy, Inc. transferred in 2014 to an entity that is not a party to this suit.

Plaintiffs assert three claims: breach of lease; breach of fiduciary duty; and fraud, deceit, and constructive fraud. Plaintiffs seek to recover on their own behalf and on behalf of two putative classes.[2]

In their Motion, Defendants first argue that Plaintiffs released their claims against all Defendants associated with royalties paid between May 2002 and May 2017 by participating in a class settlement. Defendants next argue that Plaintiffs' claims against Exxon Mobil Corporation and ExxonMobil Oil Corporation are barred by statute of limitations and no tolling doctrines are applicable. Defendants additionally argue that Plaintiffs' claims against unnamed defendants, and claims seeking to hold the named Defendants liable for the actions of others, must be dismissed. With respect to the claim of breach of fiduciary duty, Defendants argue they do not owe a fiduciary duty to Plaintiffs. And with respect to claims for fraud, deceit, and constructive fraud, Defendants argue they do not meet the heightened pleading requirement of Fed. R. Civ. Pro. 9(b); they do not adequately allege reliance; and they are not distinct from Plaintiffs' breach of contract claim. The Court will address each argument in turn.[3]

---

[2] For the purposes of this motion, the Court will only consider Plaintiffs' claims, and not those of the putative classes. If Plaintiffs do not have viable claims, they cannot represent the putative classes on those claims. *See Wheeler v. Exxon Mobil Corp.*, CV 19-4025-KHV, 2019 WL 5188738, at *2 n.2 (D. Kan. Oct. 15, 2019).

[3] Defendants also move to dismiss Plaintiffs' claims based on lack of personal jurisdiction over the putative class claims. Defs.' Motion at 29-30. But, as Defendants note, this claim is more appropriately considered in Defendants' Motion to Strike Class Allegations [Doc. No. 24] and the Court does not consider it here.

## II. Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the non-moving party. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To avoid dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). If the plaintiff seeks relief on claims that must be pled with particularity under Fed. R. Civ. P. 9(b), the Court must determine whether the plaintiff has satisfied that heightened pleading standard.

## III. Analysis

### A. Choice of Law

When a federal court exercising diversity jurisdiction is faced with a choice of law determination, the court "must apply the choice of law provisions of the forum state in which it is sitting." *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993). In Oklahoma, contract choice of law rules require the court to apply the law of the state (1) chosen by the parties, (2) where the contract was made or entered into, or (3) the place of performance if indicated in the contract. *Moore v. Subaru of Am.*, 891 F.2d 1445, 1449 (10th Cir. 1989). When evaluating tort issues, Oklahoma choice of law rules apply the law of the state with the most significant relationship to the parties. *Id.* at 1448. In this case, Oklahoma law applies for both contract and tort, which the parties do not dispute.

### B. Claims within the *Chieftain* Settlement

Defendants first argue that Plaintiffs released all Defendants from all claims associated with royalties paid between May 2002 and May 2017. Defs.' Motion at 13-15. Defendants point to a settlement agreement reached in *Chieftain Royalty Co. v. XTO Energy, Inc.*, asserting they are

3

"Released Parties" and most of the claims at issue in this case are included in the "Released Claims." *Id.* at 13-15; *id.*, Ex. 11; *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. 6:11-cv-29-KEW, Doc. No. 197 at 32 (E.D. Okla. Nov. 21, 2017), approved Doc. No. 229 (E.D. Okla. Mar. 27, 2018) (*Chieftain* Settlement). In response, Plaintiffs argue (1) it is premature for the Court to consider the *Chieftain* Settlement in a Rule 12(b)(6) motion; and (2) the *Chieftain* Settlement includes only wells operated by XTO Energy, Inc., and not by Exxon Mobil Corporation or ExxonMobil Oil Corporation. Pls.' Response at 8, 14-17.

The Court disagrees with Plaintiff that it is premature to address the *Chieftain* Settlement. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (internal quotation marks omitted). And while the court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted," there are exceptions to the rule that, in deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint. *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002) (internal quotation marks omitted). The relevant exception here is "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.*; *accord Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1034-35 (10th Cir. 2002).

In this instance, the document at issue is the *Chieftain* Settlement, which Plaintiffs reference in their complaint and which is central to Plaintiffs' claims as it defines, at least in part, the contours of those claims. *See* First Am. Compl. at 6, 9, 11, 14, 15, 38. Plaintiffs provide the docket citation to the *Chieftain* Settlement and Defendants attach it as an exhibit to their Motion;

4

the parties do not dispute its authenticity.[4]  First Am. Compl. at 14 n.8, 38 n.17; Defs.' Motion, Ex. 11.

Plaintiffs cite the *Chieftain* Settlement's definition of "Released Parties" to argue Exxon Mobil Corporation and ExxonMobil Oil Corporation "are not identified anywhere" in the definition, "even though actual subsidiaries/affiliates of XTO [Energy, Inc.] are."  Pls.' Response at 15-16.  Plaintiffs argue that the entities named in the definition are the "predecessors to or subsidiaries of XTO" but Exxon Mobil Corporation and ExxonMobil Oil Corporation are "not." *Id.* at 15.  Plaintiffs further argue that "Exxon and Mobil Oil are not successors to XTO because XTO still exists."  *Id.* at 16.

Plaintiffs' arguments, however, are disingenuous.  The definition of "Released Parties" under the *Chieftain* Settlement is as follows:

> **"Released Parties"** means Defendant [XTO Energy, Inc.]; its predecessors, successors, heirs, assignors, and assignees; any person or entity who made royalty payments on behalf of Defendant or its predecessors, successors, heirs, and assigns; and any past and present directors, officers, employees, attorneys, agents, consultants, servants, stockholders, members, representatives, subsidiaries, and affiliates of the foregoing persons or entities, including without limitation, Ringwood Gathering Company, Timberland Gathering & Processing Co., Inc., Ardmore Gathering, and Cross Timbers Energy Services (CTES).

*Chieftain* Settlement at § 1.36.  As an initial matter, the definition of "Released Parties" is expansive.  It also makes clear that the named entities are included "without limitation" and, thus, are not intended to be a comprehensive list of the "actual subsidiaries/affiliates of XTO" or

---

[4] In addition to the *Chieftain* Settlement being central to Plaintiffs' claims, it is also pertinent as one of Defendants' affirmative defenses.  *See* Fed. R. Civ. P. 8(c)(1).  As such, "it is proper to dismiss a claim on the pleadings based on an affirmative defense . . . only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."  *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see also Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)].").

"predecessors to or subsidiaries of XTO." Thus the question is whether Exxon Mobil Corporation and ExxonMobil Oil Corporation fall within the broad definition of "Released Parties."[5] The answer is yes.

To summarize and simplify the facts set forth in the First Amended Complaint, specifically with respect to the Wheeler Lease:

- Exxon Corporation drilled and produced the Perry Rowe Unit 2 well in November 1988 and began paying royalties to Plaintiff Wheeler. Exxon Corporation changed its name to Exxon Mobil Corporation in 1999. Beginning in late 1999 or 2000, Exxon Mobil Corporation paid royalties to Plaintiff Wheeler until 2006.

- In 2006, Exxon Mobil Corporation transferred interests in the Wheeler Lease and operation of the Perry Rowe Unit 2 well to XTO Energy, Inc. Pursuant to this transfer, XTO Energy, Inc. paid royalty to Plaintiff Wheeler from 2006 to 2010.

- On June 25, 2010, Exxon Mobil Corporation acquired XTO Energy, Inc. by merging a wholly owned subsidiary of ExxonMobil Oil Corporation with and into XTO Energy, Inc., with XTO Energy, Inc. continuing as the surviving corporation and as a wholly owned subsidiary of ExxonMobil Oil Corporation. As a result of the merger, XTO Energy, Inc. became a wholly owned subsidiary of Exxon Mobil Corporation.

- As a result of the merger, XTO Energy, Inc. as a wholly owned subsidiary of Exxon Mobil Corporation and "acting on behalf of itself and/or its affiliates," has paid and currently pays Plaintiff Wheeler royalty under the Wheeler Lease for gas produced from the Perry Rowe Unit 2-30 well in Latimer County, Oklahoma.

First Am. Compl. at 3-4, 6. As such, Exxon Mobile Corporation is the predecessor to XTO Energy, Inc. in that it "transferred interests in the Wheeler Lease" to XTO Energy, Inc. pursuant to which XTO Energy, Inc. "took over payment of royalties" on the well. First Am. Compl. at 4, 6.

Specifically with respect to the Key Lease:

- Exxon Corporation drilled and produced the Perry Rowe Unit 2 well in November 1988. From 1988 until October 1992, Exxon Corporation paid royalties to Plaintiff Key's predecessors in interest. Around the time of the October 1992 Division Order and until sometime in 1999, Exxon Corporation paid royalties to Plaintiff Key. Exxon Corporation changed its name to Exxon Mobil Corporation in 1999. Beginning in late 1999 or 2000, Exxon Mobil Corporation paid royalties to Plaintiff Key until 2006.

---

[5] Plaintiffs do not contest that the wells are "Class Wells" or the claims are "Released Claims" during the "Class Period." *See* Pls.' Response at 14-17; Defs.' Motion at 13-14.

- In 2006, XTO Energy, Inc. took over payment of royalties on this well.
- As a result of the 2010 merger, XTO Energy, Inc. as "[a]n ExxonMobil Subsidiary," has paid and currently pays Plaintiff Key royalty under the Key Lease for gas produced from the Perry Rowe Unit 2-30 well in Latimer County, Oklahoma.

First Am. Compl. at 7, 8.  As such, Exxon Mobil Corporation is the predecessor to XTO Energy, Inc. in that XTO Energy, Inc. "took over payment of royalties" from Exxon Mobil Corporation. First Am. Compl. at 7.

Specifically with respect to the Fitzgerald Lease:

- At some point believed to be in 2001, Exxon Mobil Corporation, on behalf of ExxonMobil Oil Corporation, paid royalty to J. W. Fitzgerald under the Fitzgerald Lease.  In 2011, J. W. Fitzgerald formed Fitzgerald Farms, LLC and contributed the royalty interest in the Fitzgerald Lease.  As a result of the transfer of interests to Fitzgerald Farms, LLC, Exxon Mobil Corporation, on behalf of ExxonMobil Oil Corporation, paid royalty to Plaintiff Fitzgerald Farms, LLC under the Fitzgerald Lease.
- Pursuant to the 1999 merger between Mobil Oil Corporation and Exxon Corporation, ExxonMobil Oil Corporation succeeded to the lessee's rights and obligations under the Fitzgerald Lease.  It operated the Fitzgerald #1 well and paid royalty to the lessors, including Plaintiff Fitzgerald Farms' predecessors in interest under the Fitzgerald Lease.
- Exxon Mobil Corporation transferred the wells to XTO Energy, Inc. in 2013, which then paid royalty to Plaintiff Fitzgerald Farms.

First Am. Compl. at 9-11.  As such, ExxonMobil Oil Corporation is the predecessor to XTO Energy, Inc. in that ExxonMobil Oil Corporation held the "lessee's rights and obligations under the Fitzgerald Lease" until 2013 when the parent company, Exxon Mobil Corporation, "transferred the wells to XTO Energy, Inc."  First Am. Compl. at 9-11.

In the Wheeler Lease, the Key Lease, and the Fitzgerald Lease, XTO Energy, Inc. was preceded by either Exxon Mobil Corporation or ExxonMobil Oil Corporation.  Accordingly, Exxon Mobil Corporation and ExxonMobil Oil Corporation are predecessors to XTO Energy, Inc. and are included within the definition of "Released Parties" under the *Chieftain* Settlement.[6]

---

[6] To the extent Plaintiffs argue Exxon Mobil Corporation and ExxonMobil Oil Corporation are not "affiliates" of XTO Energy, Inc., the Court finds it unnecessary to decide the issue as it is clear

7

Accordingly, under the *Chieftain* Settlement, Plaintiffs have released all their claims against all Defendants between May 1, 2002 and May 31, 2017.  Accordingly, Defendants' Motion to dismiss these claims is granted.

### C. Claims outside of the *Chieftain* Settlement

Carving out claims covered by the *Chieftain* Settlement leaves Plaintiffs' contentions that all older claims (i.e., claims before May 1, 2002) against XTO Energy, Inc. are unreleased as well as all newer claims (i.e., claims after May 31, 2017) against XTO Energy, Inc. *See* Pls.' Response at 15.  Also remaining are Plaintiffs Key's and Wheeler's assertions of claims for "Exxon-operated wells" prior to May 1, 2002, and Plaintiff Fitzgerald Farms' assertion of claims for "Mobil-operated wells" prior to May 1, 2002.  *See id.*

#### 1. Claims against unnamed defendants

Though Plaintiffs name only Exxon Mobil Corporation, ExxonMobil Oil Corporation, and XTO Energy, Inc. as Defendants in the caption of the complaint, in the body of the complaint they purport to include as Defendants:

> Defendants, acting on behalf of themselves and their affiliates, and current and past employees, agents, representatives, attorneys, or others acting on their behalf and all those to whose prior leasehold interests they have succeeded to and for whom they are legally liable whether by merger, assignment, or otherwise – such as [a list of 22 named entities] – shall herein collectively be known as "Defendants."

First Am. Compl. at 13, ¶ 52.  As an initial matter, Fed. R. Civ. P. 10(a) provides that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties."  Though Paragraph 52 of the complaint evinces that Plaintiffs knew many of Defendants' predecessors in interest, it appears

---

they are predecessors.  Even without deciding, however, the Court notes it unlikely that a parent corporation would not be considered an affiliate of its wholly owned subsidiary.

that Plaintiffs have attempted to side-step Rule 10(a) by failing to name the various entities in the title of the complaint, yet still seeking to include them as "Defendants." *See* First Am. Compl. at 1, 13; *see also* Pls.' Response at 11 ("Plaintiffs painstakingly traced their interests from the original lessor and lessee to the current lessor and lessee. . . . Plaintiffs researched and identified many affiliate predecessor entities for which Defendants are liable by merger, assignment, assumption of debts or liabilities, consolidation, sale, acquisition, mere continuation, or otherwise for the underpayment of Plaintiffs' royalty . . . ."); *cf. Swafford v. Newfield Expl. Co.*, 19-CV-02746-PAB-NYW, 2020 WL 5881276, at *3 (D. Colo. Sept. 24, 2020) (discussing that Rule 10(a) is not the proper vehicle for addressing plaintiff's assertion that defendants are liable for underpayment that may have resulted from their predecessors' or successors' actions when plaintiff is not seeking to sue the predecessors and successors themselves but, instead, only defendants).

Nevertheless, when determining whether to dismiss a claim pursuant to Rule 12(b)(6), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And in a case against multiple defendants, "it is particularly important . . . that the complaint makes clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250-51 (10th Cir. 2008). Plaintiffs have not done so here.

As a general rule, when one company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller. The four exceptions to this rule are when: (1) there is an agreement to assume such debts or liabilities; (2) there is a consolidation or merger of the corporations; (3) the transaction was fraudulent in fact; or (4) the

9

purchasing corporation is a mere continuation of the selling company. *Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 300 (Okla. 2009). With the possible exception of Humble Oil & Refining Company, the Court finds Plaintiffs have set forth no factual allegations that would support the imposition of liability upon Defendants for the acts of "their affiliates, and current and past employees, agents, representatives, attorneys, or others acting on their behalf and all those to whose prior leasehold interests they have succeeded to and for whom they are legally liable whether by merger, assignment, or otherwise." Specifically, Plaintiffs have set forth no facts to show that any of the four above-noted exceptions would apply in this case to any of these persons or entities. Accordingly, the Court finds that any claims asserted that seek to hold Defendants liable for the actions of any other persons or entities, including as set forth in Paragraph 52 of the First Amended Complaint, should be dismissed. *See Wheeler v. Exxon Mobil Corp.*, CV 19-4025-KHV, 2019 WL 5188738, at *3 (D. Kan. Oct. 15, 2019) (dismissing claims against unnamed predecessors and successors, as well as claims seeking to hold defendants liable for the actions of unidentified predecessors and successors); *see also Murrah v. EOG Resources*, CIV-10-994-M, 2011 WL 227652, at *1-2 (W.D. Okla. Jan. 21, 2011) (dismissing claims seeking to hold defendants liable for acts of predecessors and successors when plaintiff alleged no facts supporting such liability); *Hitch Enters., Inc. v. Cimarex Energy Co.*, CIV 11-13-W, 2011 WL 13113326, at *2-3 (W.D. Okla. Mar. 15, 2011) (*Hitch I*) (same).

The Court notes that Plaintiffs have alleged that Exxon Mobile Corporation assumed all the rights, assets, and liabilities of Humble Oil & Refining Company pursuant to a merger, and such allegation may suffice to impose liability for Humble Oil & Refining Company's actions. *See* First Am. Compl. at 3; *see also id.* at 4, 8. But because all claims against Humble Oil & Refining Company date from 1972 or prior, and therefore are time-barred, *see* discussion *infra*, the Court need not

determine the sufficiency of the allegations. *See* First Am. Compl. at 3 ("Effective January 1, 1973, Humble Oil & Refining Company merged into Exxon Corporation.").

### 2. Older claims

Defendants seek dismissal for the older claims (i.e., claims before May 1, 2002) under Fed. R. Civ. P. 12(b)(6) asserting they are barred by statutes of limitation. Defs.' Motion at 15-21. The Court agrees. "Although the statute of limitations is an affirmative defense, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when the dates given in the complaint make clear that the right sued upon has been extinguished." *Max Oil v. Range Prod.*, 681 F. App'x 710, 713 (10th Cir. 2017) (internal quotation marks omitted). Moreover, when it is evident from the complaint that a plaintiff's claims are time-barred, it is the plaintiff who bears "the burden of establishing the factual basis for tolling the statute." *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). And this burden must be met through factual allegations supporting the plaintiff's failure to discover the injury and its cause, as well as facts demonstrating the exercise of reasonable diligence to discover the cause of the injury. *See AMC West Hous. LP v. NIBCO, Inc.*, CIV-18-959-D, 2019 WL 4491331, at *6 (W.D. Okla. Sept. 18, 2019) (discussing, under the discovery rule and fraudulent concealment, plaintiff's duty to allege facts showing not only "that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts"); *Linthicum v. Praetorian Ins. Co.*, CIV-18-872-D, 2019 WL 1590591, at *2 (W.D. Okla. Apr. 12, 2019) ("[A]ny party claiming the benefit of equitable tolling of a limitations period bears the burden of pleading and proving justifiable circumstances." (internal alterations and quotation marks omitted) (citing *Olson v. Federal Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004); *Aldrich*, 627 F.2d at 1044 n.4 (10th Cir. 1980))).

Plaintiffs assert claims for breach of lease/contract, which claims are subject to a five-year limitations period. First Am. Compl. at 39; Okla. Stat. tit. 12 § 95(A)(1). Plaintiffs also assert

claims for breach of fiduciary duty and fraud, which claims are subject to a two-year limitations period. First Am. Compl. at 40-44; Okla. Stat. tit. 12 § 95(A)(3). As the older claims are all prior to May 1, 2002, the breach of lease/contract claims would have been barred in 2007, while the breach of fiduciary duty and fraud claims would have been barred in 2004.

With respect to these limitations, Plaintiffs allege:

> Because Plaintiffs . . . were deceived and did not have requisite information to reveal Defendants' scheme, they are entitled to tolling of any applicable statute of limitation periods. Because of Defendants' misrepresentations, omissions, and/or general scheme to conceal its underpayments, Plaintiffs . . . did not become aware and could not have become aware through the exercise of reasonable diligence, that such schemes were in existence. Therefore, Plaintiffs . . . are entitled to toll the applicable statutes of limitations, based upon the doctrines of fraudulent concealment, discovery rule, continuing conduct, and equitable estoppel.

First Am. Compl. at 44. These cursory allegations, however, are incapable of sustaining the tolling doctrines. *See Boettcher v. Conoco Phillips*, 721 F. App'x 823, 825 (10th Cir. 2018) (affirming dismissal of complaint under Rule 12(b)(6) for violation of statute of limitations when plaintiffs' complaint "contains only a conclusory statement as to the application of the [asserted tolling doctrine] and lacks any factual allegations relevant to the [plaintiffs'] exercise of reasonable diligence"). Accordingly, all older claims (i.e., claims before May 1, 2002) are dismissed as time-barred.

### 3. Newer claims

Plaintiffs Key and Wheeler assert claims for wells operated by XTO Energy, Inc. during the time period after May 31, 2017. First Am. Compl. at 6, 9.

#### a. Breach of lease

The breach of lease claims against XTO Energy, Inc. for royalties paid after May 31, 2017, are the only claims Defendants do not seek to dismiss and, thus, they remain. *See* Defs.' Motion at 2, 12 n.7.

12

### b. Breach of fiduciary duty

Plaintiffs seek to bring a claim for breach of fiduciary. First Am. Compl. at 40. In doing so, Plaintiffs distinguish between those royalty owners who have interests that are subject to drilling and spacing orders under 52 Okla. Stat. § 87.1, and those who have interests that are subject to unitization orders under 52 Okla. Stat. §§ 287.1-287.15. *Id.* Plaintiffs assert "[a] fiduciary duty was created when Defendants or their predecessors in interest requested and received unitization orders from the Oklahoma Corporation Commission pursuant to those statutes." *Id.* Accordingly, Plaintiffs assert the claim for breach of fiduciary duty only for those royalty owners who have interests that are subject to unitization orders, which according to the complaint, are only members of the Subclass – and not Plaintiffs. *See id.* ("¶126. Plaintiffs' wells and the wells of other members of the Subclass are subject to drilling and spacing orders under 52 OKLA. STAT. tit. § 87.1. ¶127. Members of the Subclass also have interests in Oklahoma wells that are subject to unitization orders under 52 OKLA. STAT. tit. §§ 287.1-287.15."). As such, Plaintiffs do not allege they have a right to a fiduciary duty and therefore fail to state a plausible claim for breach of fiduciary duty on their own behalf. Thus, dismissal of the breach of fiduciary duty claim is appropriate. *See Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 n.4 (W.D. Okla. 2012) (*Hitch II*) ("At this stage of the litigation, each named plaintiff must plead its own cause of action [and] meet its own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal*."); *accord Kunneman Props., LLC v. Marathon Oil Co.*, 17-CV-00456-GKF-JFJ, 2019 WL 4658362, at *3 (N.D. Okla. Sept. 24, 2019).[7]

---

[7] Moreover, even had Plaintiffs alleged that they were owed a fiduciary duty pursuant to drilling and spacing orders under 52 Okla. Stat. § 87.1, it does not appear such allegation would suffice to state a viable claim. *See Wheeler*, 2019 WL 5188738, at *6-7 (finding plaintiffs "failed to adequately allege a fiduciary claim" when they appeared to base their claims on Section 87.1 units

Within their assertion of breach of fiduciary duty, Plaintiffs also assert a claim for breach of the implied duty to market under 52 Okla. Stat. § 87.1(e) for those royalty owners, including Plaintiffs, whose interests are subject to a drilling and spacing order. First Am. Compl. at 40; *see also id* at 39 (asserting breach of lease "including implied duties"). As pled, this assertion does not implicate a breach of fiduciary duty. As such, Plaintiffs have not adequately alleged a breach of fiduciary duty and this claim is dismissed.

### c. Fraud, deceit, and constructive fraud

Plaintiffs additionally assert fraud, deceit, and constructive fraud, which Defendants seek to dismiss for a variety of reasons. First Am. Compl. at 41-44; Defs.' Motion at 24-28. Under Oklahoma law, an actionable claim for fraud or deceit requires the plaintiff to establish the following elements: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment. *Kunneman Props.*, 2019 WL 4658362, at *4 (citing *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009)). Constructive fraud is the concealment of material facts which one is bound under the circumstances to disclose and, unlike actual fraud or deceit, constructive fraud does not require intent to deceive. *Id.* (citing *Bankers Tr. Co. v. Brown*, 107 P.3d 609, 613 (Okla. Civ. App. 2004); *Faulkenberry v. Kansas City S. Ry. Co.*, 602 P.2d 203, 206 n.8 (Okla. 1979)).

### i. Pleading with particularity

Defendants argue that Plaintiffs' claims fail to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). Pursuant to Rule 9, "[a] party must state with particularity the circumstances

---

because "operators of Section 87.1 units do not owe a fiduciary duty to holders of royalty interests").

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507 (2019) (internal quotation marks omitted). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and alterations omitted).

Here, Plaintiffs have provided the required specificity by alleging Defendants made uniform misrepresentations and/or omissions on the monthly check stubs sent to Plaintiffs. Plaintiffs assert the check stubs reflected the wrong volume and price and did not detail all of the monetary fee and in-kind volumetric deductions. First Am. Compl. at 32-34, 41; *see also* Pls.' Response at 23. Plaintiffs also include allegations as to why the statements were false. First Am. Compl. at 42, 43. Thus, the asserted false and misleading statements are alleged with the requisite particularly pursuant to Rule 9(b). *See Kunneman Props.*, 2019 WL 4658362, at *4 (finding fraud alleged with sufficient specificity when plaintiff alleged defendant made material misrepresentations as to the volume, price, monetary fee, and in-kind volumetric deductions in specified monthly check stubs).

### ii.     Pleading detrimental reliance

Defendants next contend that Plaintiffs do not plausibly allege detrimental reliance on the alleged misrepresentations and omissions in the check stubs and therefore fail to state a claim. Fraud, deceit, and constructive fraud "require detrimental reliance by the person complaining." *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004); *Hitch II*, 859 F. Supp 2d at 1259.

Defendants emphasize the similarity between the complaint at issue here and the complaint dismissed in *Wheeler*, where the District Court of Kansas found Plaintiffs' allegations inadequate to show reliance. Defs.' Motion at 24-25; Defs.' Reply at 13-14; *see also Wheeler*, 2019 WL 5188738, at *7. As Plaintiffs point out, however, in this complaint they included specific allegations of their reliance, which were not in the *Wheeler* complaint. Pls.' Response at 25-26; First Am. Compl. at 42. Here, Plaintiffs allege they relied on the accuracy of the monthly payments by "(a) cashing their royalty checks; (b) not questioning the accuracy of the check stubs; and, (c) not suing for the matters set forth herein before now." *Id*. Detrimental reliance "may be shown by factual allegations evincing action or inaction," and Plaintiffs' allegations adequately show such reliance. *Hitch Enters., Inc. v. Cimarex Energy Co.*, CIV-11-13-W, 2012 WL 12863013, at *6-7 (W.D. Okla. Oct. 10, 2012) (*Hitch III*) (finding similar allegations of reliance adequate to withstand a motion to dismiss); *see also Wheeler*, 2019 WL 5188738, at *8 n.5 (discussing the adequacy of the allegations in *Hitch III*).

In the instant case, Plaintiffs have alleged that they both acted on, and failed to act in response to, Defendants' fraudulent and deceitful representations to their detriment, first, by cashing the royalty checks and, second, by not challenging the amounts of the royalty payments as they reasonably and justifiably believed that Defendants' calculations were correct. Construing these allegations in the light most favorable to Plaintiffs and accepting such well-pleaded facts as true, the Court finds that, at this early stage of the proceedings, Plaintiffs have sufficiently alleged the essential element of detrimental reliance in connection with their claims of fraud, deceit, and constructive fraud. *See Hitch III*, 2012 WL 12863013, at *7; *accord Low v. OMNI Life Sci., Inc.*, CIV-18-305-SLP, 2019 WL 3242726, at *7 (W.D. Okla. July 17, 2019) (recognizing allegations of both action and inaction may support a claim of detrimental reliance and noting with respect to

defendant's motion to dismiss, "[i]t is unclear what additional level of particularity Plaintiffs could add in these circumstances beyond stating (as they have) that they accepted Defendants' representations as true and declined to demand immediate payments accordingly").

### iii.     Similarity to contract claim

Having survived those pleading hurdles, however, Plaintiffs' fraud claim runs into another problem.  Under Oklahoma law, to assert both a claim for fraud and a claim for breach of contract, the claims must be distinct. *Brown v, Elephant Talk Comms. Corp.*, CIV-18-00902-PRW, 2020 WL 7220793, at *8 (W.D. Okla. Dec. 7, 2020); *McKnight v. Marathon Oil Co.*, CIV-17-00264-R, 2017 WL 1628981, at *2 (W.D. Okla. May 1, 2017).  To determine whether a fraud claim is sufficiently distinct from a breach of contract claim, the courts consider two things:  whether the facts supporting each claim are different, as well as whether the damages arising as a result of each claim are different.  *Brown*, 2020 WL 7220793, at *8; *Edwards v. Farmers Ins. Co.*, 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. 2009).  As pled, Plaintiffs' breach of contract and fraud claims are based on the same facts and seek the same damages.

Though Plaintiffs attempt to distinguish between improperly paying royalties (breach of contract) and concealing the breach through misrepresentations on a check stub (fraud), *see* Pls.' Response at 27-29, Plaintiffs' fraud claims are still based in contract.  And Plaintiffs already have a claim for breach of contract based upon Defendants' obligations to "properly account for and pay royalty interests."  First Am. Compl. at 39; *see also* discussion *supra* at B.3.a.  "Because their allegation for fraud concerns the identical conduct, it will not suffice under Oklahoma law." *McKnight*, 2017 WL 1628981, at *2.

Additionally, a plaintiff must incur actual damages stemming from the tort that are distinct from damages stemming from the breach of contract. *Edwards*, 2009 WL 4506218, at *5.  Here, the damages Plaintiffs assert for the fraud claims arise from the leases and are not sufficiently

17

distinct from the damages asserted under the breach of lease claim. *Compare* First Am. Compl. at 39 ("As a result of Defendants' breaches, Plaintiffs . . . have been damaged through underpayment of the actual amounts due."), *with id.* at 44 ("As a direct and proximate result of Defendants' . . . fraud, Plaintiffs . . . were underpaid monthly for royalties and are entitled to recover actual and punitive damages.").

Plaintiffs contend they did plead "different damages on the two claims because they seek punitive damages on the fraud claim." Pls.' Response at 28. Plaintiffs further contend that "[c]ourts have ruled that seeking punitive damages sufficiently distinguishes the two claims." *Id.* But it is not seeking punitive damages that sufficiently distinguishes breach of contract from fraud; rather it is alleging an "'independent, willful tort'" that "could potentially support an award of extra-contractual damages." *Edwards*, 2009 WL 4506218, at *5 (quoting *Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 565 (10th Cir. 1989)); *accord Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675 (10th Cir. 2007) (applying Kansas law and explaining that "the basis of the [fraud] claim must be different from the conduct upon which a breach of contract claim is based" and that "the fraud must have resulted in damages greater than those caused by the breach of contract alone"); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1316-17 (10th Cir. 1998) (affirming a jury's verdict of fraud and award of tort damages when tort damages were distinct from breach of contract damages); *Cont'l Res., Inc. v. PXP Gulf Coast, Inc.*, CIV-04-1681-F, 2006 WL 2865509, at *23, 25 (W.D. Okla. Oct. 5, 2006) (finding Texas' independent injury rule precluded both breach of contract claims and fraud claims when both sets of claims arose from the parties' contracts and plaintiffs did not delineate damages arising separately from the two types of claims).[8] Because

---

[8] Defendants have not argued that Plaintiffs must elect their remedies at the pleading stage as Plaintiffs allege, *see* Pls.' Response at 28-29; rather they have invoked the established rule that, in

Plaintiffs have presented no damages for tort that are independent of the breach of contract damages, they have provided no independent basis for recovering the punitive damages they assert differentiate the fraud claims from the contract claim. And because neither the facts supporting nor the damages arising as a result of the two claims are sufficiently distinct, Plaintiffs' fraud allegations are insufficient to survive the motion to dismiss.

### D.     Dismissal with or without prejudice

Because there is no set of facts Plaintiffs could plead that would alter the Court's findings that Exxon Mobil Corporation and ExxonMobil Oil Corporation are predecessors to XTO Energy, Inc. and are thus included within the definition of "Released Parties" under the *Chieftain* Settlement, amendment of the complaint would be futile on this issue. Accordingly, claims within the *Chieftain* Settlement are dismissed with prejudice.

With respect to all other claims, however, the Court must consider whether leave to amend the complaint should be granted. Pursuant to Fed. R. Civ. P. 15, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Such leave is not automatic and may be precluded by various factors, but "'if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1483, at 587 (2d ed. 1990)); *Foman v. Davis*, 371 U.S. 178, 182 (1962). And at this stage of the proceedings, the Court is unwilling to state that it is impossible that Plaintiffs could provide facts that would suffice to impose liability upon properly named additional defendants, to sustain tolling doctrines, to assert

---

order to simultaneously assert breach of contract and fraud, damages arising as a result of each claim must be different. *See* Defs.' Motion at 27-28; *McKnight*, 2017 WL 1628981, at *2.

a breach of fiduciary duty, or to properly assert fraud.  As such, dismissal of all claims outside the *Chieftain* Settlement is without prejudice.

**IV.   Conclusion**

Based on the foregoing, Defendants' Motion to Dismiss [Doc. No. 23] is GRANTED.  All claims against all Defendants for the time period between May 1, 2002 and May 31, 2017, are dismissed with prejudice.  All older claims (i.e., claims before May 1, 2002) are dismissed without prejudice.  All newer claims (i.e., claims after May 31, 2017) are dismissed without prejudice, with the exception that Plaintiff Key's and Plaintiff Wheeler's breach of lease claims against XTO Energy, Inc. remain.

Plaintiffs may file a motion to amend their complaint by January 15, 2021.

IT IS SO ORDERED this 14th day of December, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE